UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

George Dunning, Jr., *et al.*,

    Plaintiffs,

        v.

Judith A. Varnau, *et al.*,

    Defendants.

Case No. 1:14cv932

Judge Michael R. Barrett

## ORDER

This matter is before the Court upon Plaintiffs' Motion for Voluntary Dismissal without Prejudice under Rule 41(a)(2). (Doc. 107). Defendants Judith and Dennis Varnau have filed a Memorandum in Opposition. (Doc. 109).

### I.    BACKGROUND

This case arises from the death of Zachary Goldson, who was found in his cell at the Brown County Jail hanging from sheet tied to a part of the sprinkler system in the ceiling. (Doc. 10). Plaintiffs filed their original complaint on December 4, 2014. (Doc. 1). Plaintiffs were officers employed by the Brown County Sheriff's Office at the time of Goldson's death. Defendant Dr. Varnau is the former Brown County Coroner. Defendant Dennis Varnau is the husband of Dr. Varnau and was authorized by her to assist her in her duties as coroner. The following excerpt from a related state court case summarizes the background of this case:

> Goldson had a history of suicidal behavior, including swallowing pens, toothbrushes, and staples, as well as discussing his preferred burial clothing. Goldson's sister and girlfriend both stated that Goldson was suicidal and had threatened to harm himself on multiple occasions.

On the night of Goldson's suicide, he was transported to the hospital after he swallowed several items. During the transport, Goldson assaulted a police officer by grabbing him from behind, trying to reach the officer's weapon, and ultimately causing serious cuts on the officer's face. The officer struggled with Goldson, and four bystanders aided the officer in subduing Goldson. Goldson was quickly returned to the jail, and left alone in his cell for 23 minutes and 42 seconds before officers discovered Goldson's body hanging from the sprinkler system.

An investigation by the Ohio Bureau of Criminal Investigation ("BCI") confirmed that Goldson's death was suicide. As part of the investigation, the prison provided BCI with video surveillance of the hallway outside of Goldson's cell. No one is seen on the video coming or going from Goldson's cell for the 21 minutes prior to his suicide. Even so, Varnau and her husband, Dennis, espoused the belief that members of the Brown County Sheriff's Office killed Goldson by strangling him with a ligature and staging the hanging to look like a suicide. Varnau alleged that police killed Goldson in retaliation for Goldson's assault on the officer during his transport to the hospital. In her official capacity as Brown County Coroner, Varnau indicated on Goldson's death certificate that his death was caused by strangulation and that the death was a homicide.

Varnau created a slide presentation, which included allegations and "evidence" regarding Goldson's death. The presentation was shown to the grand jury, who decided not to indict anyone in connection with Goldson's death. Nevertheless, Varnau announced her plans to conduct a second inquiry into Goldson's death to "clarify" her finding of homicide.

The allegations made by Varnau against the Brown County Sheriff's Office were publicized on local news channels and the internet, and Varnau's allegations against the sheriff's office became widely known.

Varnau and her husband have a history of dispute with the Brown County Sheriff's Office. Dating back to 2008 when Dennis ran against the current sheriff, Dwayne Wenninger, the Varnaus and the sheriff's office have been engaged in a very public feud. *See Adamson v. Coroner*, 12th Dist. Brown No. CA2014-07-016, 2014-Ohio-5739, 2014 WL 7390121. Dennis claimed that Sheriff Wenninger was not qualified to be sheriff, and filed suit to oust Wenninger from office. This court denied Dennis' attempt to oust Wenninger, and the feud between the parties continued. *State ex rel. Varnau v. Wenninger*, 12th Dist. Brown No. CA2009-02-010, 2011-Ohio-3904, 2011 WL 3433024.

*Dunning v. Varnau*, 95 N.E.3d 587, 590–91 (Ohio Ct. App. 2017).

2

Following this Court's ruling on Defendants' Motion to Dismiss (Doc. 30), Plaintiffs' only remaining claims were claims for defamation and civil conspiracy. The parties began conducting discovery on these claims, but had multiple disputes which required the Court's intervention. (See, e.g., Docs. 39, 57). In March of 2018, this Court stayed discovery in order to await the trial in a related case: *Ashley Bard v. Brown County*, et al., Case No. 1:15cv643.

The *Bard* case was brought by Ashely Bard, the sister of Zachary Goldson. Bard brought claims for excessive force pursuant to 42 U.S.C. § 1983 against the same officers who are the plaintiffs in this case. Bard maintained that the officers staged the cell to make it look like Goldson's death was a suicide. This Court granted summary judgment in favor of the officers, but the Sixth Circuit reversed, finding that there was a genuine issue of material fact regarding whether Goldson could have physically hanged himself; and also ruling that it was error for this Court to discount Dr. Varnau's testimony because "[h]er testimony contributes to the genuine dispute of fact over whether Goldson strangled himself after the officers left him in a hobble strap." *Bard v. Brown Cnty., Ohio*, 970 F.3d 738, 757, 761 (6th Cir. 2020). Following remand, this Court held a four-day jury trial in June of 2021. The jury found no liability on the part of the officers. (Doc. 198, PAGEID 6396).

On September 3, 2021, Defendants filed a motion to lift the stay in this case. (Doc. 106). The Court held several telephone conferences to discuss the status of the case. Counsel for Plaintiffs indicated that given the outcome of the *Bard* case, Plaintiffs intended to dismiss their claims. Defendants opposed dismissal, which gave rise to the present matter being brought before the Court.

## II. ANALYSIS

Plaintiffs move for dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2), which provides that after an answer or motion for summary judgment has been filed:

> . . . an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41 (a)(2). "Whether dismissal should be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994). An abuse of discretion may be found where dismissal without prejudice would cause the defendant "plain legal prejudice." *Id*. "In determining whether a defendant will suffer plain legal prejudice, a court should consider such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Id*. However, "there is no requirement that each of the *Grover* factors be resolved in favor of the moving party before dismissal is appropriate. The factors are 'simply a guide for the trial judge, in whom the discretion ultimately rests.'" *Rosenthal v. Bridgestone/Firestone, Inc.*, 217 F. App'x 498, 502 (6th Cir. 2007) (quoting *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 474 (7th Cir. 1988)).

Defendants maintain that if Plaintiffs' claims were dismissed, they would be barred from their only opportunity to vindicate themselves. Defendants renew their request to file a motion for leave to amend their Answer in order to add a counterclaim, which was

4

initially made the day after this Court stayed the case. (See Doc. 94). Defendants cite the factors used to determine whether a defendant would suffer legal prejudice—albeit from courts outside of the Sixth Circuit—but do not articulate how these factors apply in the instant case. Therefore, the Court is left to make this determination on its own.

Turning to the *Grover* factors, the Court notes that Defendants have not suggested that their effort and expense of preparation for trial was substantial. Before this case was stayed, the parties had conducted some initial discovery. However, because several side issues had been raised, discovery had not been completed and this case was still in the early stages of litigation.[1] A review of the docket does not demonstrate any excessive delay on the part of Plaintiffs in prosecuting the action. Instead, Plaintiffs were pursuing their claims diligently, as demonstrated by the filing of their Supplemental Complaint. (See Doc. 58). Defendants point to the delay caused by the stay of these proceedings (see Doc. 102, PAGEID 1490), but in ordering the stay, this Court found that the stay would not result in hardship or prejudice to Defendants. (Doc. 93, PAGEID 1459). Next, the Court finds that the basis for dismissal is clear given the finding of no liability on the part of these Plaintiffs in the *Bard* case. Finally, Defendants did not file a

---

[1] For instance, Defendants withdrew the submission of this case for defense and indemnity by County Risk Sharing Authority, Inc. ("CORSA"). (Doc. 71). This prompted Plaintiffs to request that the Court order Defendants to post a bond in the same amount as the CORSA coverage being waived. (Doc. 74). Defendants also sought to enter and inspect the cell in the Brown County Jail where Goldson died. (Doc. 83). Defendants argued that the inspection ordered in the *Bard* case was insufficient. (Doc. 83, PAGEID 1084). Defendants had also filed a motion requesting that this Court order the investigator for Ohio's Bureau of Criminal Investigation "to appear at and cooperate with a re-enactment of what he previously reported and testified that he did: an attempt at demonstrating how Zachary Goldson could have actually hanged himself in cell 15 of the Brown County Jail." (Doc. 84, PAGEID 1091). Through a series of telephone status conferences, the Court was attempting to address these issues. The Court had also directed the parties to confer and agree on dates to be incorporated into an amended calendar order, but this had not yet been accomplished when the Court ordered that the case be stayed.

motion for summary judgment.

To the extent that Defendants argue that they will not have their "day in court," "[c]ourts readily find plain legal prejudice where dismissal results in stripping a defendant of an absolute defense."  *Rosenthal*, 217 F. App'x 498 at 500.   However, Defendants do not assert that they would be stripped of an absolute legal defense if the Court dismissed the case.   Instead, Defendants seek to file unspecified counterclaims against Plaintiffs. Under the facts and circumstances of this case, the Court concludes that the *Grover* factors weigh in favor of allowing Plaintiffs to dismiss the case without prejudice.

Defendants maintain that if Plaintiffs' motion is granted, they are entitled to attorney's fees and costs.   As the Sixth Circuit has explained:

> Though defense costs are frequently awarded as a condition of a grant of voluntary dismissal, such costs are not mandatory.  *DWG Corp. v. Granada Invs., Inc.*, 962 F.2d 1201, 1202 (6th Cir. 1992).   Relevant factors in evaluating whether to award attorney's fees and costs include "whether the plaintiff acted in good faith in bringing the action, extensive discovery costs were involved, and extraordinary expenses were incurred in defending the action."  *Malibu Media LLC*, 705 F. App'x at 410.

*Walther v. Fla. Tile, Inc.*, 776 F. App'x 310, 318 (6th Cir. 2019) (footnote omitted).

The Court finds the factors warranting an award of attorney's fees and costs are not present here.   There is nothing in the record indicating that Plaintiffs brought this action in bad faith.   Because discovery was only partially completed, extensive discovery costs were not involved.   Based on the entries contained in the docket, a total of seven depositions were taken by the parties.  (Docs. 40-46).   Finally, Defendants have not identified any extraordinary expenses incurred in defending the action.   For these reasons, the Court concludes that Defendants are not entitled to an award of attorney's fees and costs.

III.    **CONCLUSION**

Based on the foregoing, Plaintiffs' Motion for Voluntary Dismissal without Prejudice under Rule 41(a)(2) (Doc. 107) is **GRANTED**.  Plaintiffs' claims for defamation and civil conspiracy are **DISMISSED without PREJUDICE**.  This matter is **CLOSED and TERMINATED** from the active docket of this Court.  All remaining motions are **DENIED as MOOT**.

IT IS SO ORDERED.

                                            */s/ Michael R. Barrett*
                                            Michael R. Barrett
                                            United States District Judge